UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR GERARDO SOLANO MORILLO, | No. 1:25-cv-01533-DJC-AC |
| Plaintiff, | |
| v. | ORDER |
| SERGIO ALBARRAN, et al., | |
| Defendants. | |

    Petitioner is a 70-year-old noncitizen, who entered the United States in 2006. On November 7, 2025, Petitioner appeared for an adjustment of status interview, and United States Immigration and Customs Enforcement ("ICE") officers detained him, purportedly pursuant to 8 U.S.C. § 1225(b). Petitioner is presently in ICE custody.

    On November 11, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing that he cannot lawfully be detained pursuant to this statute and that his present detention violates his due process rights and the Administrative Procedure Act.

    In the numerous cases, district courts in this Circuit have applied a similar approach. Based on the substantial weight of this authority and for the reasons stated below, the Court grants Petitioner's Motion for Temporary Restraining Order. The

1

Court orders Petitioner released and will set a further briefing scheduled on a Motion for Preliminary Injunction.

## BACKGROUND

Petitioner is a 70-year-old man from Peru who entered the United States in 2006. (Pet (ECF No. 4) ¶ 18.) For 19 years, Petitioner has lived in San Pablo near his 92-year-old father, ex-partner, son, daughter, and five grandchildren. (Reply (ECF No. 11) at 2.) During the time Petitioner has lived here, he has never been convicted of a crime nor had criminal charges filed against him. (Pet. ¶ 5.) Petitioner has worked as a metal recycler and paid his taxes. (*Id.* ¶ 2.)

In 2023, Petitioner's son became a U.S. citizen and filed an immediate relative petition (I-130) for Petitioner. (*Id.* ¶ 4). This petition was approved on November 7, 2025. (*Id.* ¶ 25.) On the same date, Petitioner appeared for his adjustment of status interview. (*Id.* ¶ 28.) The U.S. Citizenship and Immigration Services ("USCIS") Officer conducting the interview stated that Petitioner's status would have been approved but for one technical issue: Petitioner's adjustment medical exam (I-163) was invalid because the doctor who signed this exam did not qualify as a "civil surgeon" when she signed the form.[1] (*Id.* ¶ 6.) The USCIS Officer then contacted ICE officers, who immediately arrived at the interview and detained Petitioner. (*Id.* ¶ 35.) On this date, a Notice to Appear was issued to Petitioner, stating that he is removable under INA § 212(a)(6) because he is present in the United States without admission or parole. (*Id.* ¶ 31.) To date, Petitioner has not been provided an opportunity to generate a new medical examination form and remains detained in California City, California. (*Id.* ¶¶ 36–37.)

Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for Temporary Restraining Order. (ECF Nos. 4–5.) Briefing on the Motion for Temporary

---

[1] Although the Officer denied Petitioner's adjustment of status on this basis, Petitioner's counsel has identified that the USCIS website lists this doctor as a civil surgeon qualified to sign medical examination forms. (Pet. ¶ 6.)

Restraining Order is now complete.  (Mot. (ECF No. 5); Opp'n (ECF No. 9); Reply (ECF No. 11).)  The Court heard argument on Petitioner's Motion for Temporary Restraining Order on November 14, 2025.  Mary Bosworth appeared for Petitioner and Audrey Hemesath appeared for Respondents.  At the close of oral argument, the Motion was taken under submission.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical."  See *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted).  The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success.  *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

## DISCUSSION

### I.  Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his claim that he has been unlawfully detained under 8 U.S.C. § 1225 and is instead subject to 8 U.S.C § 1226.  Respondents assert Petitioner has been detained pursuant to Section 1225(b)(2) and, therefore, "must be detained" and is not entitled to a bond hearing.  (Opp'n at 2).

Petitioner counters that he is not subject to Section 1225 but rather is subject to Section 1226, which entitles him to a bond hearing.

Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States. However, Section 1225 provides for mandatory detention of certain individuals, while Section 1226 establishes a discretionary detention scheme. Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). In contrast, under Section 1226's discretionary scheme, a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C § 1226(a). Pending this decision, the Attorney General may continue to detain the arrested individual or may release the individual on bond or conditional parole. 8 U.S.C § 1226(a)(2)(A)–(B). Section 1226(a) affords noncitizens a statutory right to a bond hearing before an immigration judge. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) (citing 8 C.F.R. § 1236.1(d)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (explaining that under "§ 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final"). "At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they are not a flight risk or danger to the community." *Bostock*, 779 F. Supp. 3d at 1256.

Though discretionary detention is the "default rule" under Section 1226, there are exceptions to Section 1226's discretionary scheme. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)." *Id.* at 289. Under Section 1226(c), the "Attorney General shall take into custody any [noncitizen] who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* (citing 8 U.S.C. § 1226(c)(1)) (internal quotation marks omitted).

This Court agrees with Petitioner that he is likely subject to Section 1226(a)'s discretionary detention scheme rather than Section 1225(b)(2)'s mandatory detention scheme and, therefore, is entitled to a bond hearing. Respondents argue Petitioner is an "applicant for admission" within the meaning of Section 1225. (Opp'n at 2.) This argument reflects a recent executive branch policy change directing federal immigration officials to seek expedited removal of a larger swath of noncitizens by classifying all noncitizens present in the United States as "applicant[s] for admission" under Section 1225. *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *1–4 (N.D. Cal. Sept 12, 2025), describing this policy change).

This Court rejects Respondents' argument and finds that the applicability of these provisions is governed by when and where a noncitizen encounters immigration enforcement officials. Courts in this Circuit have found that Section 1225 applies to those apprehended upon arrival to the United States while Section 1226 applies to those already living within the United States. *See, e.g.*, *Bostock*, 779 F. Supp. 3d at 1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens already residing in the United States, including those who are charged with inadmissibility, continue to fall under the discretionary detention scheme in Section 1226") (internal quotation marks omitted); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL 3013328, at *6–7 (E.D. Cal. Oct. 27, 2025). This interpretation of these provisions is further supported by the canon against surplusage, a recent Supreme Court decision, and longstanding agency practice.

*First*, this interpretation is supported by the canon against surplusage. As explained above, Section 1226(c) creates a class of exceptions to Section 1226(a)'s "default" rule of discretionary detention. *See Jennings*, 583 U.S. at 288. Under

5

Section 1226(c), those who have committed certain offenses are subject to mandatory detention. *See* 8 U.S.C. § 1226(c). For example, Section 1226(c) requires detention of a noncitizen who is inadmissible, that is "present in the United States without being admitted or paroled," and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" specified criminal offenses. *See* 8 U.S.C. § 1226(c)(1)(E); § 1182(a)(6)(A)(i). Section 1225 requires detention of "applicant[s] for admission." 8 U.S.C. § 1225(b)(2)(a). If the government is correct that the term "applicants for admission" extends to all inadmissible noncitizens there would be no reason for Section 1226 to require detention of particular classes of inadmissible noncitizens. Therefore, the government's argument would render the whole of Section 1226(c) surplusage.

Respondents' interpretation of these provisions would similarly render recent amendments to this statute surplusage. As Petitioner highlights, in 2025 Congress enacted the Laken Riley Act, which added additional categories of individuals to those subject to mandatory detention under Section 1226(c). (Reply at 4.) It would make little sense for Congress to enact these amendments subjecting new individuals to mandatory detention if they were already subject to such detention pursuant to Section 1225. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025) (explaining that "assuming any inadmissible noncitizen is an 'applicant for admission' who is 'seeking admission' (and, therefore, subject to mandatory detention under § 1225(b)(2)), would render the Riley Laken Act unnecessary"). At a minimum, Congress' enactment of the Laken Riley Act, which clearly contemplated that § 1226 applies generally to undocumented individuals who have been living in the United States, would constitute Congressional acquiescence in that longstanding interpretation of Sections 1225 and 1226. *See, e.g., United States v. Mays*, 430 F.3d 963, 967 (9th Cir. 2005).

*Second*, this interpretation of the statute is consistent with the Supreme Court's recent description of these provisions in *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

In *Jennings*, the Supreme Court explained that "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.  The Supreme Court described proceedings under Section 1225 as a process that "generally begins at the Nation's borders and ports of entry, where the government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287.  "Then, when discussing Section 1226, *Jennings* describes it as governing 'the process of arresting and detaining' noncitizens who are living 'inside the United States' but 'may still be removed,' including noncitizens 'who were inadmissible at the time of entry.'" *Bostock*, 779 F. Supp. 3d at 1258 (quoting *Jennings*, 583 U.S. at 288).

*Third*, this interpretation is consistent with longstanding agency practice.  Until recently, the Department of Homeland Security ("DHS") consistently treated noncitizens apprehended while living in the United States as detained under Section 1226(a).  *See Bostock*, 779 F. Supp. 3d at 1258, 1260-61; *C.A.R.V.*, 2025 WL 3059549, at *5.  Executive Branch regulations implementing these provisions issued just six months after their enactment provide that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond determination."  62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  As this interpretation "was issued roughly contemporaneously with the enactment of the statute and remained consistent over time," this "longstanding practice of the government—like any other interpretive aid —can inform a court's determination of what the law is."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up).

As Petitioner has been present in the United States for 19 years (Reply at 2), he is likely to succeed on the merits of his claim that he is unlawfully detained under

Section 1225(b)(2)'s mandatory detention provision. See *J.A.C.P.*, 2025 WL 3013328, at *7 (holding petitioner was likely to succeed on the merits of their claim that they were not subject to mandatory detention under section 1225(b)(2)(A) under similar circumstances); *Bostock*, 779 F. Supp. 3d at 1261 (same). Therefore, Petitioner is likely to succeed on the merits of his claim that he is subject to the procedures laid out by and entitled to the rights afforded under Section 1226(a), most notably, a bond hearing.

## II. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of a temporary restraining order. Petitioner is an insulin-dependent diabetic, who takes medication for his diabetes, hypertension, and a heart condition, for which he recently underwent a heart bypass operation. (Pet ¶ 9.) "Petitioner is currently suffering severe medical consequences in the facility, because he is not receiving the medication prescribed for his many ailments in the proper dose." (Reply at 6.) The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

More broadly, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018). The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995. Petitioner has thus established irreparable harm.

## III. Balance of the Harms & the Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members." *Hernandez*, 872

F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).

Here, the interests of equity and the public weigh in favor of Petitioner. Petitioner's father, son, daughter, and grandchildren are all harmed by his continued detention. A temporary restraining order also inflicts minimal harm to the government. Though Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here. This Order instead furthers that interest through application of the correct law. Finally, this relief benefits the public. "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

////

////

////

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 5) is GRANTED;
2. Petitioner Oscar Gerardo Solano Morillo shall be released immediately from Respondents' custody.  Respondents shall not impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing.
3. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.
4. Respondents are ORDERED TO SHOW CAUSE on or before November 21, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order.  On or before November 26, Petitioner may file an opposition.  On or before December 1, Respondents shall file a reply, if any, to Petitioner's opposition.

IT IS SO ORDERED.

Dated:  **November 15, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – SolanoMorillo25cv015336.tro

10